Parker, J.
A preliminary question has been suggested in this case, which meets us in limine. It is whether the matters in controversy between these parties could be properly tried upon a writ of habeas corpus. If the issue was one of slavery or no slavery, and the right of the defendant in error to freedom was the litigated point, presenting some real and not merely colourable ground for controversy, I should concede that it ought not to be determined upon the habeas corpus, for the reasons assigned in the case of De Lacy v. Antoine & others, 7 Leigh 438. But it appears here that the matter in question is not the right to freedom, but the right to levy an execution on one who has been duly emancipated by an acknowledged owner. Ben is a free man under the act of assembly, but the claim is to make him liable for the antecedent debts of Lining, because Lining's conveyance to Barr, being purely voluntary, was not binding on creditors, although it was binding on Lining. The real question is, whether Ben is illegally confined in custody; and the solution of that question depends not upon the enquiry whether he was duly and properly emancipated, but whether, being emancipated, he is not liable to a charge which, if allowed, may or may not reduce him to his original state of slavery. No person is claiming to be his master, no person is detaining him as a slave, so as to authorize him to petition a court to be allowed to sue in forma pauperis for the recovery of his freedom, under our act of assembly; but the return to the writ of habeas corpus is, that he has been taken in execution to *476 satisfy a debt due from his former master, and the validity of that return depen'ds on considerations extraneous of the question whether or no he is a slave. Although the enquiry thus presented may be complicated and difficult, involving questions of fact as well as law, yet that is no reason for denying to the petitioner the benefit of the great and salutary writ of habeas corpus. It often happens that a judge is forced to decide the most embarrassing and delicate questions on the return to that writ. The writ itself applies to all cases of illegal detention of the person, except that which grows out of the relation of master and slave; and it would apply to that also, but that another remedy is provided which seems virtually to exclude a resort to the habeas corpus. If the petitioner were allowed to sue in forma pauperis one detaining him as a slave, and should recover'in the action, still that decision would not determine the questions raised on this record, or preclude the creditors of Dining from levying their executions. Therefore I think we may now adjudicate the right of the petitioner to be discharged from the custody of the sheriff of Shenandoah, in this proceeding by habeas corptis.
There is no difficulty about the facts of the case. £Here the judge detailed them.]
In applying the law to these facts, we must recollect that the deed of emancipation from Barr to Ben is not assailed, and that it was not for a debt contracted by the person emancipating, before such emancipation was made, that the petitioner was taken in execution, (see 1 Rev. Code, cb. 111. § 54. p. 434.) but for the debt of Dining, who had conveyed to the emancipator, and received at the same lime a paper writing stipulating that Ben should be free at the emancipator’s death. Nor is the conveyance to Barr made utterly void as to creditors by the act of fraudulent conveyances; because the facts certified negative the idea that it was “ contrived *477 of malice, fraud, covin, collusion or guile, to the intent or purpose to delay, hinder or defraud creditors;” and because, if the consideration paid to Dirting is not “deemed valuable in law,” the conveyance was by deed duly proved and recorded, and possession delivered by the grantor. Although therefore, if the deed be voluntary, creditors may certainly avoid it, yet it may be doubted whether, under the circumstances, this execution could be levied on the petitioner, who had been duly emancipated by Barr and was then in the enjoyment of all the rights of a freeman, without first setting aside the deed from Dirting to Barr, and the deed of emancipation from Barr to the defendant in error. But waiving this enquiry, I cannot bring my mind to the conclusion that the deed to Barr, with the view of ultimate emancipation, was a purely voluntary one: without which the plaintiff in error cannot subject Be» to the debt due from Dirting to his testator. Dirting had permitted his slave to act for himself, upon being paid a hire which is not proved to be an inadequate one. During the three years that he thus acted, the petitioner earned the 200 dollars which was after-wards paid to his master as the consideration for the conveyance to Barr. This money, if in the slave’s possession, might have been taken from him by Dining notwithstanding the previous arrangement, if he chose to exercise the rigid power of a master; for I readily concede that in this commonwealth no contract between a master and slave is binding, and the latter can acquire no property of which the former may not deprive him. But this, I think, results from the power which the master may exert over the slave, and the denial to the latter of all remedy to recover back the money so taken, rather than from any acknowledged principles of right and justice. If the master does not choose to exercise the power over the extra earnings of the slave, and to commit a manifest injustice, I do not perceive *478 that we are bound to allow his creditors to urge a want of consideration, when no fraud upon their rights was contemplated, and none can be practised, if an actual equivalent has been received, although that equivalent consists of something upon which the master, against conscience, might have seized. Besides, the case is stronger, where (as here) a part of the consideration was beyond the power of the master. About 125 dollars of the earnings of the slave whilst the property of Dirting, had not been collected at the date of the conveyance, but was afterwards collected and paid as a part of the 200 dollars. Dirting could not have recovered this money from the employers of Ben, because he had permitted his slave, in violation of the law, to trade and act as a freeman, and that law would not have assisted him in recovering from others under a contract thus made with the slave. The money was, however, paid to Ben whilst he belonged to Barr, and was applied (by the latter, I presume,) in discharging the consideration money mentioned in the deed. This 125 dollars was more than the amount of the debt due to the testator of the plaintiff in error; and being received by Dining afterwards under such circumstances, prevents us, as I think, from considering the conveyance a purely voluntary one. Whether the price stipulated, or this portion of it, was adequate or not, might be a material circumstance in determining the question of fraudulent .intent; but as that is settled by the proofs before the judge, it can have no influence on the question now under consideration.
The cases cited are those wherein a fraud was meditated upon existing creditors; or where the conveyance was made with a view to future indebtedness; or where a conveyance of property, although accompanied by possession, has been set aside in equity for the want of a valuable consideration. The case at bar does not belong to either of the two first classes; nor to the last, *479 unless we are prepared to decide that the master cannot bestow upon the slave the privilege of acquiring any property, which may serve as a foundation (it the master’s will and conscience so determine) for a consideration moving, mediately or immediately, from the slave to the master, for the inestimable grant of freedom. In this anomalous case, where there is no authority to bind us, I conceive we may obey the dictates of humanity and justice.
I am therefore for affirming the order of the judge discharging the petitioner from the custody of the sheriff of Shenandoah; leaving the plaintiff in error to seek his remedy in equity, if he has any.